**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LINDA L. COLEMAN** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL NO. L-04-2295** |
| | : | |
| **TALBOT COUNTY DETENTION:** | | |
| **CENTER, et al.** | : | |
| **Defendants.** | : | |
| | : | |

**MEMORANDUM**

A "right to sue" notice issued by the EEOC is a jurisdictional prerequisite to filing a Title VII case in federal court.  The claimant must file within 90 days.  Unless the claimant files within the required time, the suit is time barred.

Once the EEOC has issued a 90-day letter it may only revoke the notice under prescribed circumstances, such as when a party makes a valid and timely request for reconsideration.  The EEOC has no authority to grant extensions of time for a claimant to file suit.  The 90-day rule is a Congressional directive which the courts construe strictly, even when the results might seem harsh, in order to ensure that equitable exceptions do not vitiate the clear-cut rule.

Courts have created a narrow equitable exception that tolls the filing period.  Failure of a claimant to receive a notice does not qualify for this exception if the claimant was at fault for failing to notify the EEOC of a change of address.

These principles operate to bar Linda Coleman's claim.  As will be discussed, she changed residences without notifying the EEOC of her new address and she did not know about the "right to sue" notice until only 21 days remained for her to file suit.  The EEOC purported to rescind the notice in order to give her additional time.  The EEOC had no authority to do so, however, and the "right to sue" notice remained the legally effective document.  When the 90 days expired, so did Coleman's right to sue the defendants.  Given the EEOC's purported rescission, this result seems

harsh.  It is, however, the legally mandated result.  Accordingly, the Motion for Summary Judgment

is granted.

I.      **BACKGROUND**

Linda Coleman ("Coleman") was employed as an officer at the Detention Center from May

1999 through June 2002.  She claims that another guard, Corporal Robinson, harassed her almost

daily during the Fall of 1999, on the basis of her race (black) and sex (female).  She complained to

her supervisors, but no action was taken.  On December 14, 1999, Coleman complained directly to

the Warden, who suspended Corporal Robinson for one month**.**  When Robinson returned to work,

the Warden made an effort to see that Coleman and Robinson did not work together, but Coleman

maintains that these measures were inadequate and did not prevent Robinson from intimidating her.

Coleman filed a charge of discrimination with both the EEOC and the Maryland Commission on

Human Relations ("MHRC") on February 14, 2000.[1]  That April, the Goldsmith Law Firm began

representing Coleman.  Through her counsel, Coleman amended her discrimination charge to

include an allegation of retaliation.

During the course of the investigation, Coleman moved, but she failed to notify either the

EEOC or the MCHR of her new address.  On December 22, 2003, the MCHR sent "Written

Findings" to the parties.[2]  The written findings reviewed the details of the MCHR's investigation,

and concluded that no probable cause existed to support Coleman's charges.[3]  Coleman's counsel

---

[1]      The MCHR conducted the investigation on behalf of the EEOC as part of a work-sharing agreement.

[2]      Def.'s Mot. for Summ. J. Ex. 1.

[3]      See id.

received a copy of these "Written Findings" directly from the MCHR.[4]

Approximately six weeks later, The EEOC issued a "right to sue" notice ("first notice,"

dated February 11, 2004), stating that it was adopting the findings of the MCHR.[5]  The notice was

sent to Coleman's former address, and the post office returned the letter to the EEOC.[6]  In the

meantime, Coleman's counsel had been contacting the MCHR, in writing and by telephone, about

the status of her case, but counsel's contact at MCHR failed to advise him that a "right to sue"

notice had issued.[7]

On March 29, 2004, Coleman's counsel faxed a letter to the EEOC requesting a "right to

sue" notice.[8]  It appears that this was the first time that Coleman's counsel had contacted the EEOC

directly, rather than the MCHR.  It also appears that the EEOC did not reply promptly to the fax

request.  Three weeks later, on April 20, 2004, Coleman's counsel called the EEOC.  At this time,

the EEOC State and Local Coordinator, Sandra Byrd, informed Coleman's counsel that a "right to

sue" notice had already been issued.[9]  When Coleman's counsel told Ms. Byrd that he had never

---

[4]    The case-caption on the written findings lists Coleman's (incorrect) address, her counsel's name and address, the Detention Center's address, and the name and address of the Detention Center's counsel. (John Breads, who represents the defendants in the instant matter as well). Pl.'s Opp., Affidavit of Leizer Z. Goldsmith ¶ 14.

[5]    Def.'s M. for Summ. J. Ex. 2.  The notice is addressed to Coleman's former address.  The notice is also copied to R. Andrew Hollis, the Talbot County Manager, but not to Mr. Breads, who had been representing the Detention Center.

[6]    Def.'s M. for Summ. J. Ex. 4, "Letter of Sandra Byrd, EEOC State and Local Program Manager," dated April 21, 2004.

[7]    Pl.'s Opp., Affidavit of Adam W. Marker, ¶¶ 3, 6, 7.

[8]    Pl.'s Opp., Affidavit of Adam W. Marker, ¶ 8.

[9]    Pl.'s Opp., Affidavit of Adam W. Marker, ¶¶ 10-11.

seen the notice, she sent out a second "right to sue" notice ("second notice," dated April 20, 2004).[10]

The next day, Ms. Byrd sent Coleman a letter stating that the EEOC was "rescinding" the February

11th notice because it had issued the second notice on April 20th.[11]  Coleman filed her suit on July

19th, exactly 90 days from the April 20th notice.[12]

The defendants argue that the February 11th notice, not the April 20th notice, is controlling

and, therefore, that Coleman filed her suit too late.  This is the only remaining issue in the Motion

for Summary Judgment.[13]

## II.    STANDARD

The Court may grant summary judgment when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Nevertheless, in

determining whether there is a genuine issue of material fact, the Court views the facts, and all

reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.

---

[10]      Def.'s Mot. for Summ. J. Ex. 3.  Again, the new notice is copied to R. Andrew Hollis, the Talbot County Manager, but again, not to the Detention Center's counsel.

[11]      Def's Mot. for Summ. J. Ex. 4.  The letter is addressed to Coleman's incorrect address. Ms. Byrd faxed the letter to Coleman's counsel.  Pl.'s Opp., Affidavit of Leizer Z. Goldsmith, ¶ 22, Ex. 10.

[12]      Coleman amended her complaint on September 17, 2004 to add Talbot County as a defendant.

[13]      The defendants also attacked the legal sufficiency of Coleman's § 1983 claims (Counts IV and V).  In her Opposition, Coleman abandoned them, and Counts IV and V are dismissed.
       Additionally, the Detention Center argues that it is a "non-jural entity" and is not, therefore, a proper party to this action.  Talbot County created the Detention Center, which is "an institution within the Department of Corrections."  Code of Talbot County, Maryland § 42-2.
       Coleman did not brief the issue.  Instead she has chosen to drop her claims against the Detention Center, while going forward with her claims against Talbot County.  Accordingly, the Court will strike the Talbot County Detention Center as a party.

Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

### III.   ANALYSIS

A "right to sue" notice is a prerequisite for filing a Title VII case in federal court.  As any

"right to sue" notice clearly states, a claimant has 90 days from the time the notice is issued to file a

complaint.[14]  The courts construe this deadline strictly; a case filed after 90 days is time-barred.  In

limited circumstances, the 90-day period is subject to equitable tolling.  See Harvey v. City of New

Bern Police Dept., 813 F.2d 652 (4th Cir. 1987).  The district court must "conduct a thorough

examination of the facts to determine if reasonable grounds exist for an equitable tolling of the

filing period."  Id. at 654.

In this case, the second "right to sue" notice  must be considered a legal nullity.  The EEOC

had no authority to issue it.  There was no defect in the first, no request for reconsideration, and no

notice of reconsideration that would authorize the EEOC to revoke the first notice.[15]  The only

"problem" with the first notice is that Coleman did not receive it, because she did not notify the

---

[14]       Both notices state: "Your lawsuit under Title VII and/or the ADA **must be filed in
federal or state court WITHIN 90 DAYS of your receipt of this Notice** or your right to sue based on
this charge will be lost.  (Emphasis in the original).  The Fourth Circuit rejects an "actual receipt" rule.
Harvey v. City of New Bern Police Dept., 813 F.2d 652 (4th Cir. 1987).  Courts presume that "service by
regular mail is received within three days."  Nguyen v. Inova Alexandria Hospital, No. 98-2215, 1999
U.S. App. LEXIS 17978 at *8 (4th Cir. 1999) (citing Fed. R. Civ. P. 6(e)).

[15]       See 29 C.F.R. § 1601.19: "If the Commission or an issuing director decides to reconsider
a final no cause determination, a notice of intent to reconsider shall promptly issue to all parties to the
charge. If such notice of intent to reconsider is issued within 90 days of receipt of the final no cause
determination, and the person claiming to be aggrieved or the person on whose behalf a charge was filed
has not filed suit and did not request and receive a notice of right to sue pursuant to §§ 1601.28(a) (1) or
(2), the notice of intent to reconsider shall vacate the letter of determination and shall revoke the charging
party's right to bring suit within 90 days."

EEOC of her change of address, as required by 29 C.F.R. § 1601.7(b).[16]

Coleman's counsel argues that under 29 C.F.R. § 1601.18, he should have been sent a copy

of the notice because he is her counsel of record.[17]  The regulation he cites, however, is

inapplicable.  Section 1601.18 pertains to dismissals when the charge is defective on its face, the

claimant refuses to cooperate or cannot be located, or the claimant refuses to accept a reasonable

settlement offer.[18]  None of these situations is germane to Coleman's charge, which was dismissed

because the EEOC had adopted the "no probable cause" finding of the MCHR.[19]  The regulation

governing "no cause" determinations is 29 C.F.R. § 1601.19, which does not require that the notice

be sent to counsel.[20]

---

[16]       29 C.F.R. § 1601.7(b) reads: "The person claiming to be aggrieved has the responsibility
to provide the Commission with notice of any change in address and with notice of any prolonged
absence from that current address so that he or she can be located when necessary during the
Commission's consideration of the charge."

[17]       29 C.F.R. § 1601.18(e) reads: "Written notice of disposition, pursuant to paragraphs (a),
(b), (c) or (d) of this section, shall be issued to the person claiming to be aggrieved and to the person
making the charge on behalf of such person, where applicable; in the case of a Commissioner charge, to
all persons specified in §§ 1601.28(b)(2); and to the respondent. Appropriate notices of right to sue shall
be issued pursuant to §§ 1601.28."

[18]       See 29 C.F.R. § 1601.18(a)-(d).

[19]       The Court notes that the first notice is entitled "Dismissal and Notice of Rights."  Def. M.
for Summ. J. Ex. 2.  This does not mean, however, that the Court should apply § 1601.18 which deals
with "dismissals."  The reason for the dismissal was that "the EEOC has adopted the finding of the state
or local fair employment practices agency that investigated this charge."  Id.  The finding was "no
probable cause," not one of the reasons enumerated in § 1601.18.  Accordingly, the provisions of 29
C.F.R. § 1601.19, "no cause determinations," apply.

[20]       29 C.F.R. § 1601.19(a) reads: "Where the Commission completes its investigation of a
charge and finds that there is not reasonable cause to believe that an unlawful employment practice has
occurred or is occurring as to all issues addressed in the determination, the Commission shall issue a letter
of determination to all parties to the charge indicating the finding. The Commission's letter of
determination shall be the final determination of the Commission. The letter of determination shall inform
the person claiming to be aggrieved or the person on whose behalf a charge was filed of the right to sue in
federal district court within 90 days of receipt of the letter of determination. The Commission hereby
delegates authority to the Director of the Office of Field Programs, or upon delegation to the Director of
Field Management Programs, and District Directors or upon delegation to Field Directors, Area Directors

In sum, there is no authority in Title VII or the relevant regulations for the EEOC to rescind and issue a new notice at the request of a party.  Although case law in this area is sparse, the Court's conclusion is compelled by analogous cases.  For example, in <u>Cleveland v. Douglas Aircraft Co.</u>,[21] the Ninth Circuit held that "the issuance by the EEOC of a second right to sue letter likewise is without effect.  The EEOC had no statutory authority to issue such a letter and therefore the [90]-day period must be deemed to run from the issuance of the first letter.  To accept the EEOC's action in issuing the second letter as proper would vitiate the congressionally mandated period of limitation in favor of a hodgepodge of ad hoc determinations by the EEOC."[22]

There was no defect with the first notice, and the second notice has no effect. [23]  Coleman indisputably did not file within the 90-day period triggered by the February 11th notice.[24]

Nor can Coleman invoke the Court's equitable powers to toll the limitations period.  In the Fourth Circuit, equitable tolling is not available to a plaintiff who failed to notify the EEOC of an

---

or Local Directors, except in those cases involving issues currently designated by the Commission for priority review, to issue no cause letters of determination."

[21]      509 F.2d 1027 (9th Cir. 1975).

[22]      <u>Id.</u> at 1030.  In <u>Hiduchenko v. Minneapolis Medical and Diagnostic Center</u>, the district court held that a second "right to sue" notice was only valid if a judge determined that the first one was improper. 475 F. Supp. 1175, 1179 (D. Minn. 1979).  Other courts have followed the <u>Cleveland</u> rule as well.  <u>See</u> e.g., <u>Ford. v. General Motors Corp.</u>, 452 F. Supp. 355 (E.D. Mo. 1978); <u>Martin v. Kmart Corp</u>, Case. No. 94-1316-CIV-T-17C, 1995 U.S. Dist. Lexis 3971 (M.D. Fla. 1995).

[23]      The Court also notes that the second notice is "issued on request," rather than merely a duplicate of the first notice. Def.'s M. for Summ. J. Ex. 3.  The second notice is titled "Notice of Right to Sue (*Issued on Request*)" (emphasis in the original).  Notices issued on request are regulated by 29 C.F.R. § 1601.28(a), which also contains no authority to rescind a prior notice in this circumstance.

[24]      The Fourth Circuit has rejected an interpretation that only actual *receipt* of a notice triggers the 90-day limitation.  <u>See Harvey</u>, 813 F.2d at 654.

address change.[25]  Equitable tolling "is appropriate when, but only when, extraordinary

circumstances beyond [Coleman's] control prevented [her] from complying with the statutory time

limit."[26]  Even if she were allowed to invoke equitable tolling, Coleman would not be entitled to it

because she has not shown that "extraordinary circumstances" prevented her from filing.

Coleman's counsel knew about the original notice with approximately 21 days left to file,

yet he did not do so.[27]  In an analogous case, the Fourth Circuit refused to apply equitable tolling

when a plaintiff had just ten days remaining.[28]

Coleman relies upon three factors to avoid the limitations period: (i) that she did not receive

the notice for 69 days; (ii) that the EEOC did not send a copy of the notice to her counsel of record,

and (iii) that the EEOC purported to rescind the first notice and issue a superceding second notice

giving Coleman additional time to file suit.  The first two clearly do not justify equitable tolling.

The responsibility to file a change of address form lay with Coleman and the EEOC has no

---

[25]     See Vogel v. American Home Prods. Corp Severance Pay Plan, No. 96-2674,1997 U.S.
App. LEXIS 24985, at *6 (4th Cir. 1997) (unpublished) ("we have held that the doctrine of equitable
tolling does not apply where the plaintiff's failure to notify the EEOC of an address change after agreeing
to do so resulted in a lack of actual notice") (citing Harper v. Burgess, 701 F.2d 29, 30 (4th Cir. 1983)
("Additionally, we note that Mrs. Harper did not notify the EEOC of her change of address as she had
agreed to. Had she done so, we must assume that she would have personally received the original of the
right to sue letter from the EEOC in 1980. Under these circumstances, we find no "recognized equitable
grounds" to toll the running of the 90-day limitation")).
         In Vogel, the court held that even though letter was sent back to the EEOC because the plaintiff
had moved, the notice date was valid.  The court also noted that plaintiff had counsel.

[26]     Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003) (internal citations omitted) (cited in
Brown v. McKesson Bioservices Corp., No. DKC 2005-0730, 2006 U.S. Dist. LEXIS 9774 (D. Md.
2006).

[27]     It is regrettable that the EEOC never responded to the March 29, 2004 fax inquiry from
Coleman's counsel.  Also, as a matter of proper practice the EEOC should have sent a copy of the notice
to Coleman's counsel of record.  In fact, the EEOC employee manual recommends that correspondence
with the claimant be sent to counsel.  The EEOC had no statutory or regulatory obligation to do so,
however.

[28]     Vogel, 1997 U.S. App. LEXIS 24985, at *8 n.4.

obligation to send copies of notices to counsel.  It is the third that is difficult to analyze.  Why

should Coleman and her attorney not be entitled to take the EEOC, a government agency, at its

word?  Had the agency not misled[29] Coleman's counsel, he could easily have filed suit within the 21

days remaining.  The agency, however, had no authority to do what it did.  As a result, the first

notice controls.  The result in this case imposes a duty upon counsel to determine whether the

agency had the requisite authority to rescind the first notice under the circumstances presented.

Given Congress's clear intention to create a bright-line 90-day rule, this result, while strict, is

necessary to preserve the objective application of the limitations period.  Accordingly, the Motion

for Summary Judgment will be granted.

## IV.    CONCLUSION

For the reasons stated herein, the Court will grant the Motion for Summary Judgment.  The

Clerk is directed to CLOSE the case.


Dated this  _30th___  day of August, 2006


                                              _____/s/_____
                                              Benson Everett Legg
                                              Chief Judge

---

[29]        The Court uses the term "misled" because the EEOC issued a second notice.  The record
is silent, however, as to the full content of the conversation between Coleman's counsel and Ms. Byrd.  It
may be that Ms. Byrd advised him that he would have to file within the 21 days left, but he convinced her
to issue a second notice.  Regardless, the Court will draw all reasonable inferences in the light most
favorable to the nonmoving party.